(No. 68962.—

GEORGE WARD, Appellant, v. K MART CORPORATION, Appellee.

*Opinion filed April 18, 1990.*

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Jeffrey W. Tock, of counsel), for appellant.

Robert P. Moore and David R. Moore, of Champaign, for appellee.

JUSTICE RYAN delivered the opinion of the court:

Plaintiff, George Ward, sued in the circuit court of Champaign County, seeking damages for injuries he sustained when he walked into a concrete post located just outside a customer entrance to a department store operated by defendant, K mart Corporation. At the time of the injury, plaintiff was carrying a large mirror which he had purchased from defendant. Following a jury trial and a verdict in favor of plaintiff, the circuit court entered judgment for defendant notwithstanding the jury's verdict on the ground that defendant had no duty to warn plaintiff of, or otherwise protect him from, the risk of colliding with the post. The appellate court, with one

justice dissenting, affirmed the judgment *n.o.v.* and held that defendant owed no duty to plaintiff under the circumstances of this case because defendant could not reasonably have been expected to foresee that plaintiff, while carrying the mirror, would fail to see or remember the post, which was an obvious condition on defendant's premises, and which plaintiff had previously encountered. (185 Ill. App. 3d 153, 163.) Plaintiff appeals to this court pursuant to our Rule 315 (107 Ill. 2d R. 315). We hold that defendant's duty to exercise reasonable care extended to the risk that one of its customers would collide with the post while leaving the store carrying a large, bulky item. Accordingly, we reverse and remand.

Defendant operates a department store in Champaign, Illinois. The store contains a home improvements department. Toward the northern end of the east side of the store is an overhead, garage-type door. Over this door is a large sign which states "Home Center." Facing this large door from the outside, approximately four feet to the right, there is a smaller door approximately 36 inches wide. On this smaller door is a sign which states "Customer Entrance." Both doors are orange in color, while this section of the outside wall is blue. Outside the smaller customer entrance door, and on either side of it, are two concrete posts, painted dark brown, and which stand approximately five feet high and three feet apart. Both posts are approximately 19 inches from the outside wall of the K mart building, and are presumably intended to protect the doorway from damage or interference by backing or parked vehicles. When the customer entrance door is opened, the door will clear the southern post by approximately four inches, but will collide with the northern post. When exiting the customer door, there is a downward step of approximately six inches. There are no windows or transparent panels on or near

the customer door which would permit viewing the posts from the interior of the store. At the time plaintiff sustained his injuries the large overhead door was closed.

On October 11, 1985, plaintiff drove to defendant's store and parked near the customer entrance door to the Home Center section of the store. Plaintiff walked past the posts and entered the store through the customer entrance door. Plaintiff testified at trial that he did not recall entering the store through this door prior to the date of his injury, but that it was possible he had. Plaintiff testified that he is a self-employed parking lot designer and striper. He stated that he had done work on the parking lot area of the K mart store at which he was injured, but had done no work in the area of the door at which he incurred his injuries. On direct examination, when asked whether he saw the posts as he entered the store, plaintiff responded, "Yes, sir. I mean they were there. Subconsciously, I guess—they were there when I went out, so, evidently, they were there when I went in." Plaintiff's counsel then asked plaintiff if he had made a mental note of the presence of the posts as he entered the store. Plaintiff responded, "Yes, I guess. I don't know. I mean—they were there. I just don't—." On cross-examination, plaintiff testified as follows concerning his encounter with the posts when he entered the store:

"Q. And you noticed these posts when you went inside did you not?

A. Subconsciously.

Q. Well, would it be fair to say that you noticed them more or less, yes?

A. More or less. Yes, sir.

Q. You didn't have trouble getting around those posts on the way in, did you, sir?

A. Not that I recall."

Plaintiff remained in the store for approximately one-half hour, during which time he purchased a large bathroom mirror, which was 5 feet long and approximately 1½ feet wide. The mirror was packed in a cardboard holder, but the face of the mirror was not covered. Plaintiff testified that after he paid for the mirror he left the cash register, carrying the mirror vertically and "kind of to the side." He stated that he did not have the mirror in front of his eyes at that time. When plaintiff reached the door, a store clerk released a security lock, which permitted customers to exit through the door by which plaintiff had entered. Apparently, the door is designed so that customers may freely enter through it during business hours, but as a means of preventing shoplifting, a security lock must be released in order for customers to exit through the door. Plaintiff opened the door by pressing against it with his left shoulder. Plaintiff estimated that he had taken from a half step to a full step through the door when he "just saw stars, and a—a bad pain, and then saw stars. That was the last I recall." First the mirror, and then plaintiff's head and face, collided with the concrete post. Plaintiff testified that he could not see the post as he exited the store because the mirror blocked his view. He stated he was not in a hurry at the time. Prior to exiting the K mart store, plaintiff was not warned by way of a sign or otherwise of the existence of the posts outside the door.

As a result of the collision, plaintiff sustained a cut to his right cheek. Immediately after the collision, plaintiff could not see out of his right eye. Although part of the vision in that eye has since returned, the center vision in that eye is still obscured. Plaintiff has also experienced severe headaches of a kind which he did not experience before the collision with the post.

A K mart employee who worked in the Home Center department at the time of plaintiff's injuries testified at trial that on any given day, from one to 50 people would use the door through which plaintiff exited. He further testified that he had seen some people brush up against the post, but that prior to October 11, 1985, he had never seen anyone injured as a result of colliding with the post while leaving through the customer entrance door.

At the conclusion of the trial, the jury found for plaintiff and assessed plaintiff's damages at $85,000. The jury further found plaintiff 20% comparatively negligent, resulting in a verdict of $68,000.

The circuit court then granted defendant's motion for judgment notwithstanding the jury's verdict. The circuit court found that it should have allowed defendant's motion for a directed verdict. In entering the judgment *n.o.v.*, the circuit court concluded that defendant had no reason to expect that plaintiff's attention would be distracted when he exited the door or that plaintiff would forget about the posts outside the door. The circuit court further stated that the posts were not inherently dangerous and that they became dangerous only when acted upon by some external force. The court concluded that the only distractions involved in the case were those induced by plaintiff himself. The appellate court affirmed the judgment *n.o.v.*, with one justice dissenting, holding that defendant could not reasonably have been expected to foresee that plaintiff would fail to see or to remember the post, which was an obvious condition and which plaintiff had previously encountered. 185 Ill. App. 3d at 163.

Directed verdicts or judgments *n.o.v.* ought to be entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary

verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510.) The essential elements of a cause of action based on common law negligence may be stated briefly as follows: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541. See also W. Keeton, Prosser & Keeton on Torts §30, at 164-65 (5th ed. 1984).) The sole inquiry before us concerns the existence of a duty, *i.e.*, whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff. (See *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525.) Whether a duty exists in a particular case is a question of law to be determined by the court. *Kirk*, 117 Ill. 2d at 525; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440.

In *Mieher v. Brown* (1973), 54 Ill. 2d 539, this court observed that "the concept of duty in negligence cases is very involved, complex and indeed nebulous." (54 Ill. 2d at 545.) Nonetheless, this court has identified certain factors which are relevant to the existence of a duty. The "reasonable foreseeability" of injury is one important concern (*Cunis v. Brennan* (1974), 56 Ill. 2d 372), but this court has recognized that foreseeability alone provides an inadequate foundation upon which to base the existence of a legal duty (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375; see also Green, *Foreseeability in Negligence Law*, 61 Colum. L. Rev. 1401, 1417-18 (1961)). Other considerations include the likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that

burden upon the defendant. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 526; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

With respect to conditions on land, the scope of the landowner's or occupier's duty owed to entrants upon his premises traditionally turned on the status of the entrant. The operator of a business, though not an insurer of his customer's safety, owed his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by the invitees. (*Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469; *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148; *Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469.) Licensees and trespassers were owed substantially narrower duties. (*Pashinian v. Hartinoff* (1980), 81 Ill. 2d 377.) Plaintiff in this case was a business invitee on defendant's premises at the time he was injured. We note that in 1984 the General Assembly enacted the Premises Liability Act (Ill. Rev. Stat. 1987, ch. 80, par. 301 *et seq.*), which provides, in pertinent part:

"§2. The distinction under the common law between invitees and licensees as to the duty owed by an owner or occupier of any premises to such entrants is abolished.

The duty owed to such entrants is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." (Ill. Rev. Stat. 1987, ch. 80, par. 302.)

The duty expressed in the Act is phrased somewhat differently than the duty owed to invitees under the common law. Under the common law, the landowner's or occupier's duty was to use reasonable care to *maintain his premises in a reasonably safe condition.* However, even under the common law, if he chose to maintain a dangerous condition on his premises, it was generally held that an adequate warning to invitees would suffice to render the condition "reasonably safe." He did not have to actu-

ally remove all dangers from his premises in order to avoid liability. (*Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 475; *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill. 2d 153, 157-58.) The Premises Liability Act thus did not significantly alter the common law duty owed by an owner or occupier of premises to invitees thereon (*Icenogle v. Myers* (1988), 167 Ill. App. 3d 239, 243), but rather retracted the special but limited immunity from tort liability enjoyed by owners and occupiers of land with respect to licensees.

In conjunction with the common law rule governing a landowner's or occupier's duty to invitees there developed a principle that the owner or occupier is not liable to entrants on his premises for harm caused by a condition on the premises of which the entrant is aware or which is obvious. (*Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 469 ("A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land"); *Calvert v. Springfield Light & Power Co.* (1907), 231 Ill. 290, 293 (owner's or occupier's obligation is to protect invitees from unsafe conditions on the land which are known to him and *not known* to the invitee); *Longnecker v. Illinois Power Co.* (1978), 64 Ill. App. 3d 634, 640 ("Generally, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them"); *Ragni v. Lincoln-Devon Bounceland, Inc.* (1968), 91 Ill. App. 2d 172, 176 (no duty to warn invitee of hazard which is obvious and known to the invitee).) A defendant was thus generally held to have no duty to warn his invitees of, or otherwise protect them from, known or obviously dangerous conditions on his premises. But clearly, in this State, as in others, the "known or obvious risk" principle was sometimes

treated as a type of contributory negligence or assumption of the risk. See generally Annot., 35 A.L.R.3d 230 (1971) (and cases cited therein).

Prior to this court's adoption of a comparative negligence formula in *Alvis v. Ribar* (1981), 85 Ill. 2d 1 (since modified by Ill. Rev. Stat. 1987, ch. 110, par. 2—1116), it made little difference whether the principle was treated as one of "no duty" or one of contributory negligence. Under either characterization the result was the same: no recovery. In the present case, however, plaintiff argues that the principle that an owner or occupier of land may have no duty to warn or otherwise take reasonable steps to protect those lawfully on his premises of certain conditions on his premises because those conditions are known to the entrant or are open and obvious is incompatible with our system of comparative fault. Plaintiff asserts that the fact a condition causing the injury may be open and obvious, or may have been previously encountered by the plaintiff, is but a factor to be considered in determining the plaintiff's comparative fault.

We agree with plaintiff that the fact a person's injury resulted from his encountering a known or open and obvious condition on a defendant's premises is a proper factor to be considered in assessing the person's comparative negligence. It is unquestionably relevant to whether the injured party was exercising a reasonable degree of care for his own safety. And in this respect a plaintiff's own fault in encountering such a condition will not necessarily bar his recovery. As discussed below, however, we find that the obviousness of a condition is also relevant to the existence of a duty on the part of defendant.

Initially we reject plaintiff's argument that the adoption of comparative negligence in this State has affected the basic duty a landowner or occupier owes to entrants upon his land with respect to such conditions. Some

courts and commentators have apparently embraced the position taken by plaintiff in this respect. (See, *e.g.*, *Cox v. J.C. Penney Co.* (Mo. 1987), 741 S.W.2d 28, 30; *Parker v. Highland Park, Inc.* (Tex. 1978), 565 S.W.2d 512, 517-18. See also Note, *Torts—Assumption of Risk and the Obvious Danger Rule. Primary or Secondary Assumption of Risk?*, 18 Land & Water L. Rev. 373, 384-85 (1983).) The primary justification for this approach is the proposition that a consequence of the adoption of comparative negligence is the elimination of those common law devices which act as absolute bars to recovery. We find this argument unpersuasive.

In *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, this court followed the common law rule that a train stopped at a crossing is generally adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and that the railroad is under no duty to give additional signs, signals or warnings. This court there rejected the plaintiff's argument that the rule, serving as an absolute bar to plaintiff's recovery, is incompatible with comparative negligence principles. We held that "the adoption of comparative negligence does not expand or otherwise alter the duty owed by a railroad to motorists approaching a standing train at a crossing." (127 Ill. 2d at 365. See also *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409.) Plaintiff here argues that the rationale for our holding in *Dunn* should be limited to the context of railroad crossing cases or that *Dunn* should be overruled. We disagree. In *Dunn*, we recognized that the advent of comparative negligence did not affect the basic duty a defendant owes a plaintiff in negligence cases. (See also *Bridges v. Bentley* (1989), 244 Kan. 434, 437, 769 P.2d 635, 638; *Thompson v. Stearns Chemical Corp.* (Iowa 1984), 345 N.W.2d 131, 134 (both expressly recognizing that comparative negligence did

not affect the basic duty owed by a defendant).) We continue to adhere to this principle. Comparative negligence has indeed altered the nature of defenses available to a defendant. (See, *e.g.*, *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 119 (defenses of misuse and assumption of the risk in strict products liability cases no longer serve as absolute bars to a plaintiff's recovery).) In the present case, however, we are not so much concerned with the defenses available to defendant, but rather with the existence of a duty on the part of defendant in the first instance. In a common law negligence action, before a plaintiff's fault can be compared with that of the defendant, it obviously must first be determined that the defendant was negligent. It is fundamental tort law that before a defendant can be found to have been negligent, it must first be determined that the defendant owed a legal duty to the plaintiff. (Green, *Duties, Risks, Causation Doctrines*, 41 Tex. L. Rev. 42, 45 (1962). See generally W. Keeton, Prosser & Keeton on Torts ch. 5 (5th ed. 1984).) We hold therefore that the adoption of comparative negligence in this State has no effect on the basic duty a defendant owes to a plaintiff.

The crux of the issue before us then is whether defendant's general duty of reasonable care extended to the risk encountered by plaintiff. This court has not recently had occasion to address the validity of the "known" or "obvious" risk principle. We do so now. We conclude that to the extent that the rule may have held that the duty of reasonable care owed by an owner or occupier to those lawfully on his premises does not *under any circumstances* extend to conditions which are known or obvious to such entrants, that rule is not the law in this State.

In *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, this court found that the "Restatement (Second) of Torts, section 343, correctly states the settled law re-

garding the liability of possessors of land to invitees."
(62 Ill. 2d at 468.) Section 343 provides:

> "A possessor of land is subject to liability for physical
> harm caused to his invitees by a condition on the land if,
> but only if, he
>
> (a) knows or by the exercise of reasonable care
> would discover the condition, and should realize that it in-
> volves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or real-
> ize the danger, or will fail to protect themselves against
> it, and
>
> (c) fails to exercise reasonable care to protect them
> against the danger."

The traditional rule, endorsed by the original Restate-
ment of Torts, sections 340 and 343 (1934), that an
owner or occupier of land has no duty under any circum-
stances to protect entrants from conditions on his land
of which the entrant knows and realizes the risk or
which are obvious, has fallen under harsh criticism. Pro-
fessor Fleming James argued that this rule is "wrong in
policy." James, *Tort Liability of Occupiers of Land: Du-
ties Owed to Licensees and Invitees*, 63 Yale L.J. 605,
628 (1954), reprinted in 5 F. Harper, F. James & O. Gray,
The Law of Torts §27.13, at 250-51 (2d ed. 1986). See
also Note, *Torts—Assumption of Risk and the Obvious
Danger Rule. Primary or Secondary Assumption of
Risk?*, 18 Land & Water L. Rev. 373, 384 (1983) ("A
duty limitation is proper for those dangers which are al-
ways outside the defendant's scope of duty, but obvious
dangers are not always found there. The argument that
the obviousness always takes the danger beyond the
scope of defendant's duty does not address the simple
fact that the same hole in the ground, perfectly obvious
by day, is not obvious under cover of total darkness");
*Hanson v. Town & Country Shopping Center, Inc.*
(1966), 259 Iowa 542, 547, 144 N.W.2d 870, 874 ("To ar-

bitrarily deny liability for open or obvious defects and apply liability only for hidden defects, traps or pitfalls, is to adopt a rigid rule based on objective classification in place of the concept of the care of a reasonable and prudent man under the particular circumstances").

It must be remembered that under our Premises Liability Act, and at least nominally under the common law, the landowner's or occupier's duty toward his invitees is always that of reasonable care. The only sound explanation for the "open and obvious" rule must be either that the defendant in the exercise of reasonable care would not anticipate that the plaintiff would fail to notice the condition, appreciate the risk, and avoid it (see Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U. Pa. L. Rev. 629, 642-43 (1952)), or perhaps that reasonable care under the circumstances would not remove the risk of injury in spite of foreseeable consequences to the plaintiff. But neither of these explanations justifies a *per se* rule that under no circumstances does the defendant's duty of reasonable care extend to conditions which may be labeled "open and obvious" or of which the plaintiff is in some general sense "aware." Professor Page Keeton noted that "there is perhaps no condition the danger of which is so obvious that all customers under all circumstances would necessarily see and realize the danger in the absence of contributory negligence, and this is particularly true if the further principle so often repeated is accepted that the customer or business invitee is entitled to assume that the premises are reasonably safe for his use." (Keeton, *Personal Injuries Resulting from Open and Obvious Conditions*, 100 U. Pa. L. Rev. 629, 642 (1952).) Attempting to dispose of litigation by merely invoking such relative and imprecise characterizations as "known" or "obvious" is certainly no adequate substitute for assessing the scope of the defendant's duty under the circum-

stances in accordance with the considerations previously identified by this court. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

Certainly a condition may be so blatantly obvious and in such position on the defendant's premises that he could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition. Even in the case of children on the premises, this court has held that the owner or possessor has no duty to remedy conditions presenting obvious risks which children would generally be expected to appreciate and avoid. (*Cope v. Doe* (1984), 102 Ill. 2d 278, 286 (seven-year-old fell through ice on artificial retention pond); see also *Sampson v. Zimmerman* (1986), 151 Ill. App. 3d 396 (four-year-old burned by candle flame).) Professor James observed that "[i]f people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight." James, *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L.J. 605, 623 (1954), reprinted in 5 F. Harper, F. James & O. Gray, The Law of Torts §27.13, at 242 (2d ed. 1986).

This is not, as plaintiff here suggests, a resurrection of contributory negligence. The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen injury to plaintiff. *Cunis v. Brennan* (1974), 56 Ill. 2d 372.

A rule more consistent with an owner's or occupier's general duty of reasonable care, however, recognizes that the "obviousness" of a condition or the fact that the injured party may have been in some sense "aware" of

it may not always serve as adequate warning of the condition and of the consequences of encountering it. It is stated in Prosser & Keeton on Torts:

> "[I]n any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it." W. Keeton, Prosser & Keeton on Torts §61, at 427 (5th ed. 1984).

See also 5 F. Harper, F. James & O. Gray, The Law of Torts §27.13, at 244-47 (2d ed. 1986); J. Page, The Law of Premises Liability §4.6, at 80-85 (2d ed. 1988).

This is the position taken by the Restatement (Second) of Torts, section 343A (1965). That section provides in pertinent part:

> "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.)

Comment *e* of section 343A(1) states the general rule that the owner or occupier may reasonably assume that invitees will exercise reasonable care for their own safety, and that ordinarily he need not take precautions against dangers which are known to the visitor or so obvious that the visitor may be expected to discover them. Comment *f*, however, explains that reason to expect harm to visitors from known or obvious dangers may arise "where the possessor has reason to expect that the

invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. \*\*\* In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances." Restatement (Second) of Torts §343A, comment *f*, at 220 (1965).

The manifest trend of the courts in this country is away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions, and toward the standard expressed in section 343A(1) of the Restatement (Second) of Torts (1965). (See, *e.g.*, *Kremer v. Carr's Food Center* (Alaska 1969), 462 P.2d 747; *Kuykendall v. Newgent* (1974), 255 Ark. 945, 504 S.W.2d 344; *Ashcroft v. Calder Race Course, Inc.* (Fla. 1986), 492 So. 2d 1309; *Friedrich v. Department of Transportation* (1978), 60 Haw. 32, 586 P.2d 1037; *Harrison v. Taylor* (1989), 115 Idaho 588, 768 P.2d 1321; *Hanson v. Town & Country Shopping Center, Inc.* (1966), 259 Iowa 542, 144 N.W.2d 870; *Williams v. Boise Cascade Corp.* (Me. 1986), 507 A.2d 576; *Adee v. Evanson* (Minn. 1979), 281 N.W.2d 177; *Cox v. J.C. Penney Co.* (Mo. 1987), 741 S.W.2d 28; *Kronen v. Richter* (1984), 211 Mont. 208, 683 P.2d 1315; *Dawson v. Payless for Drugs* (1967), 248 Or. 334, 433 P.2d 1019; *Jones v. Three Rivers Management Corp.* (1978), 483 Pa. 75, 394 A.2d 546; *Mitchell v. Ankney* (S.D. 1986), 396 N.W.2d 312; *Parker v. Highland Park, Inc.* (Tex. 1978), 565 S.W.2d 512; *Maci v. State Farm Fire & Casualty Co.* (1981), 105 Wis. 2d 710, 314 N.W.2d 914; *O'Donnell v. City of Casper* (Wyo. 1985), 696 P.2d 1278. See generally Annot., 35 A.L.R.3d 230 (1971).) Indeed the appellate court of this State has

generally embraced the approach of section 343A. (See, e.g., *Steinhauer v. Arnie Bauer Cadillac Co.* (1988), 172 Ill. App. 3d 314; *Erne v. Peace* (1987), 164 Ill. App. 3d 420; *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779; *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978; *Sepesy v. Archer Daniels Midland Co.* (1981), 97 Ill. App. 3d 868; *Watkins v. Mt. Carmel Public Utility Co.* (1988), 165 Ill. App. 3d 493; *Deibert v. Bauer Brothers Construction Co.* (1989), 188 Ill. App. 3d 108; *Piper v. Moran's Enterprises* (1984), 121 Ill. App. 3d 644; *Courtney v. Allied Filter Engineering, Inc.* (1989), 181 Ill. App. 3d 222. See also *Jakubiec v. Cities Service Co.* (7th Cir. 1988), 844 F.2d 470 (applying Illinois law).) The courts below in the present case apparently agree that sections 343 and 343A of the Restatement (Second) of Torts should govern a defendant's possible liability to those lawfully on his premises.

We recognize that the Restatement speaks to the more general question of liability, and not specifically to the existence of a duty. But we think the principles expressed there are consistent with the general duty of reasonable care owed to invitees and licensees, and they are relevant to the resolution of whether an injury was reasonably foreseeable. We emphasize, however, that since the existence of a duty turns in large part on public policy considerations, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant, as well as the likelihood of injury and the possible serious nature of such an injury must also be taken into account.

Turning to the specific facts of the present case, we agree with defendant and the trial court that there is nothing inherently dangerous about the post. It is just an ordinary post. The proper question, however, is not whether the post was inherently dangerous, but whether, under the facts of this case, it was unreasonably danger-

ous. This question generally cannot be answered by merely viewing the condition in the abstract, wholly apart from the circumstances in which it existed. There may be many conditions on a person's premises which are in fact dangerous, but not "unreasonably" so for any of a number of reasons. For example, as discussed above, the defendant may have no reason to anticipate that an entrant on his premises will fail to see and appreciate the danger. But there may also be conditions which, though seemingly innocuous . enough in themselves, indeed present an unreasonable danger under certain circumstances. For example, it may be said that there is ordinarily no unreasonable danger in an ordinary flight of stairs (*Alcorn v. Stepzinski* (1989), 185 Ill. App. 3d 1, 6-7), but stairs may indeed be unreasonably dangerous if, under the circumstances of a particular case, the defendant in the exercise of reasonable care should anticipate that the plaintiff will fail to see them. *Allgauer v. Le Bastille, Inc.* (1981), 101 Ill. App. 3d 978.

This is not to say that the defendant must anticipate negligence on the part of the plaintiff. Generally a party need not anticipate the negligence of others. (See *Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 366; *Clarkson v. Wright* (1985), 108 Ill. 2d 129, 133-34.) The inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, or forgetful of the condition after having momentarily encountered it. If in fact the entrant was also guilty of negligence contributing to his injury, then that is a proper consideration under comparative negligence principles.

We agree with the appellate court in the present case that the post with which plaintiff collided is not a hidden danger. Indeed plaintiff walked past the post when en-

tering the store and admitted he was at least "subconsciously" aware of its presence. We disagree with the appellate court's holding, however, that "defendant could not reasonably have been expected to foresee that one of its customers would block his vision with an object which he had purchased and fail to see a five-foot-tall concrete post located outside of an entrance to its store." (185 Ill. App. 3d at 163.) We may well have arrived at a different conclusion if the post would have been located further away from the entrance of the building, or if the plaintiff would not have been carrying any vision-obscuring bundle.

In *Erne v. Peace* (1987), 164 Ill. App. 3d 420, the plaintiff was injured when she fell off a step/stoop while exiting the defendant's premises. The court held that the injury was reasonably foreseeable despite the fact that the step/stoop was obvious and that the plaintiff had previously encountered it because the defendants were aware of the fact that she was visually impaired and would encounter the condition. (164 Ill. App. 3d at 425-26.) Similarly in *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, the plaintiff fell into an open and obvious hole in a house which was being remodeled. The court held that the defendant's duty extended to this risk, even though the plaintiff knew of the existence of the hole, because the defendant had reason to expect that the plaintiff's attention would be distracted while moving roof trusses. (140 Ill. App. 3d at 782-83.) In *Courtney v. Allied Filter Engineering Inc.* (1989), 181 Ill. App. 3d 222, the plaintiff was injured when he fell off a lowered dockplate used for unloading trucks. The court held that despite the obvious nature of the dockplate, the defendant had reason to foresee that the plaintiff would be distracted while unloading his truck. 181 Ill. App. 3d at 227-28.

Similarly, in the case at bar it was reasonably foreseeable that a customer would collide with the post while

exiting defendant's store carrying merchandise which could obscure view of the post. Defendant invited customers to use the door through which plaintiff entered and exited, and many customers did use it. Defendant had reason to anticipate that customers shopping in the store would, even in the exercise of reasonable care, momentarily forget the presence of the posts which they may have previously encountered by entering through the customer entrance door. It was also reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door. It should be remembered that the post was located immediately outside the entrance to the Home Center section of defendant's store. Defendant had every reason to expect that customers would carry large, bulky items through that door, particularly where, as here, the large overhead door was closed. The burden on the defendant of protecting against this danger would be slight. A simple warning or a relocation of the post may have sufficed. It is also relevant that there were no windows or transparent panels on the customer entrance doors to permit viewing of the posts from the interior of the store. Indeed defendant's clerk testified that he had seen people brush up against the post while exiting the store.

Defendant and the appellate court cite *Rosenberg v. Hartman* (1943), 313 Mass. 54, 46 N.E.2d 406, and *Snyder v. Ginn* (1960), 202 Va. 8, 116 S.E.2d 31, in support of their argument that defendant owed no duty to plaintiff. In both *Rosenberg* and *Snyder* the plaintiffs walked into a glass door on the defendants' premises. In each of these cases the court ruled that the defendant was, as a matter of law, not negligent because the defendant would have no reason to anticipate that the door posed any danger to people exercising reasonable care for their own safety. The appellate court in the

present case also relies on a similar glass door situation set out in illustration 1 to Restatement (Second) of Torts §343A (1965). *Rosenberg, Snyder* and the Restatement illustration, however, all presume that anyone exercising reasonable care would ordinarily perceive a glass door and avoid walking into it. Whatever the validity of this presumption might be, it is not controlling in the case before us.

We find illustration 4 to section 343A to be very much in point. In illustration 4, a store permits a fallen rainspout to lie across a footpath used by customers as an exit from the store. A customer leaves the store carrying an armful of bundles which obstruct her vision, and does not see the spout. She trips over it and is injured. The illustration concludes that if the store should reasonably have anticipated this, the store is liable to the customer. The comments and illustrations to section 343A thus support the position that while defendant cannot reasonably be expected to anticipate injuries which would ordinarily only result if the customer were negligent, defendant can be expected under certain circumstances to anticipate that customers even in the general exercise of reasonable care will be distracted or momentarily forgetful.

Our decision in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, and appellate court decisions finding, as a matter of law, no liability after application of the principle expressed in section 343A of the Restatement (Second) of Torts (1965) do not suggest a different result here. In *Genaust* we concluded that the defendant in the exercise of reasonable care could not have discovered the danger of electrical arcing posed by power lines *"which were neither on [the defendant's] property nor under its control."* (Emphasis in original.) (62 Ill. 2d at 468.) This court further observed that the defendant would have no reason to anticipate that an experienced electrical

worker would fail to appreciate and avoid the danger posed by electrical wires (62 Ill. 2d at 469). (See also *Icenogle v. Myers* (1988), 167 Ill. App. 3d 239; *Carroll v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 909 (both following *Genaust* on similar facts).) In the present case defendant was clearly aware of the post which it maintained just outside the customer entrance door, and as we discussed above, it was reasonably foreseeable that a customer might be injured by colliding with the post.

We find it clear that injury of the type suffered by plaintiff is a likely result of collision with a concrete post. We further find that the magnitude of the burden on defendant to exercise reasonable care to protect its customers from the risk of colliding with the post is slight, as noted above. A simple warning may well serve to remove the unreasonableness of the danger posed by the post.

Our holding does not impose on defendant the impossible burden of rendering its premises injury-proof. Defendant can still expect that its customers will exercise reasonable care for their own safety. We merely recognize that there may be certain conditions which, although they may be loosely characterized as "known" or "obvious" to customers, may not in themselves satisfy defendant's duty of reasonable care. If the defendant may reasonably be expected to anticipate that even those customers in the general exercise of ordinary care will fail to avoid the risk because they are distracted or momentarily forgetful, then his duty may extend to the risk posed by the condition. Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact. The trier of fact may also consider whether the plaintiff was in fact guilty of negligence contributing

in whole or in part to his injury, and adjust the verdict accordingly.

In sum we hold that defendant's duty of reasonable care encompassed the risk that one of its customers, while carrying a large, bulky item, would collide with the post upon exiting through the customer door. The jury instructions, which are not challenged by either party, adequately informed the jury of defendant's duty of reasonable care. There was ample evidence presented at trial to support a finding that defendant breached its duty and that the breach proximately caused plaintiff's injury. There was further ample evidence of plaintiff's own negligence contributing to his injury. We, therefore, see no reason to disturb the jury's verdict. The judgments of the circuit and appellate courts are reversed, and this cause is remanded to the circuit court of Champaign County with directions to enter judgment for plaintiff in the amount of $68,000.

*Judgments reversed;*
*cause remanded*
*with directions.*