(No. 89-CC-2935–)

RICHARD SHIELDS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed August 25, 1994.*

WISEMAN, SHAIKEWITZ, McGIVERN, WAHL, FLAVIN, HESI, BARYLSKE & MORMINO (SAMUEL A. MORMINO, JR., of counsel), for Claimant.

HINSHAW & CULBERTSON (GARY R. LIETZ, of counsel), for Respondent.

OPINION

PATCHETT, J.

This claim was filed as a result of a slip and fall accident at the University of Illinois Assembly Hall. The fall occurred on March 19, 1988, while the Claimant, Richard Shields, was visiting his son, Jeffery Shields. The Claimant and his son were attending the Illinois high school basketball championship at the Assembly Hall.

The Claimant did not leave his seat during the final two games of the tournament. His son left his seat during half time of the championship game to use the facilities. While returning to his seat, the Claimant's son did not tell him of any spills or adverse conditions on the stairs.

They stayed and watched the championship game until the final two or three minutes. In order to beat the traffic out of the parking lot, they left while the game was still in progress. They exited from their aisle and went down the stairs leading from section C, which is the top section of the Assembly Hall. The steps in section C are steep, and there are handrails on both sides of the aisle for the first seven steps.

As Mr. Shields neared the bottom of the steps, which would be near the first seven steps with the railing, he slipped and fell as a result of an apparent soda spill on the third or fourth step. He felt extreme pain in his left knee. He testified that he was not looking down at the floor as he descended the stairs, but was watching the game. He also testified that he was not using the handrails located on either side of the steps. He described the substance that he slipped on as being gummy and sticky.

Following the accident, Mr. Shields did not seek immediate medical treatment. Evidently he did not report the injury to any university staff. He returned to his son's dwelling, applied ice, and elevated his knee. He drove home the next day to Alton, Illinois. Since he continued to be in pain, he sought medical advice from his physician, Dr. Randall Rogalsky. Mr. Shields had a history of knee problems. At the time of his fall, he had a knee prosthetic. He essentially had an artificial knee. He was totally and permanently disabled due to previous injuries.

Dr. Rogalsky performed a revision of the knee prosthesis after the accident in question. Dr. Rogalsky testified

that it was his opinion that the knee replacement became loose in the fall, requiring the revision. Dr. Rogalsky continued to care for the Claimant after the surgery until October 1988.

Mr. Shields continued to have pain after the surgery and eventually consulted another physician, Dr. Edward Lansche, an orthopaedic surgeon. Dr. Lansche testified that a total left knee replacement was necessitated by difficulties caused by the replaced travel component that was performed by Dr. Rogalsky. Following the total replacement performed by Dr. Lansche, the Claimant continued to have problems with his knee. This required additional surgery and physical therapy. At the time of the trial of this case before a Commissioner of this Court on September 9, 1993, Mr. Shields testified that he was continuing to have problems walking and with physical activities such as standing, squatting, and bending. He had constant pain. The medical bills totaled $44,038.83.

Mr. Shields wrote several letters to the university requesting compensation for the injury. He told them that he was unable to work because of the injury. He indicated that one of the sources of damages was lost employment compensation, despite the fact that he had been unemployed since 1984.

Fred Rhodes, operations manager of Assembly Hall, detailed three specific procedures used in cleaning and maintaining the facilities at Assembly Hall during events such as the high school basketball tournament. There was a specific procedure regarding spills. The spills included soda and popcorn. The spills would be reported by an usher calling in on a two-way radio. There would be at least 30 to 40 radios in the hands of ushers for major basketball events. The reports would be sent to room 101, which is the main office of Assembly Hall. That office

would then contact Mr. Rhodes, and he would dispatch one of the two roving members of the spill crew to the site.

Between sessions of the tournament, Mr. Rhodes' staff went through the building utilizing concession workers, extra-help workers, and ushers to clean the facilities. This procedure would have occurred before the first of the last two basketball games played on the evening of the accident. Each individual was assigned a row and a section. That person walked the entire circumference of the section and picked up loose debris. At the end of the event, Mr. Rhodes checks with room 101 to compare their list with his list. This is an attempt to make sure that all spills were cleaned up.

The Claimant based his theory of recovery on negligence. He maintains that the University was negligent in its failure to properly maintain the facilities by failing to clean up the spill. He alleges that this caused him to fall and was the proximate cause of injuries to his knee.

A landowner has an obligation to use reasonable care and caution to keep the premises reasonably safe. A landowner is not required to give warning or precautions for dangers that are self-evident. (*Mullen v. Board of Trustees of the University of Illinois* (1985), 38 Ill. Ct. Cl. 44.) Mr. Shields testified that the spill covered the surface of the third and fourth steps of section C. Mr. Shields was responsible to see and observe any open and obvious conditions. Given his description of the size of the spill, we conclude that it was an open and obvious condition. In addition, Mr. Shields was not looking down, and he was not using the handrails which had been provided. Surely Mr. Shields was aware of his own physical limitations due to his artificial knee. In light of these limitations, we conclude that he did not use reasonable precautions in descending the stairs.

Mr. Shields has cited to the court *Ward v. K-Mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223. He uses this as the basis to assert that the university had a duty to anticipate that invitees would fail to appreciate the presence of substances on stairways when they are distracted or preoccupied with events taking place elsewhere. The Respondent has replied that the spectators are expected to exercise reasonable care for their own safety. *Ward, supra*, states that the landowner, or possessor of the land, is not expected to anticipate the negligence of others. Mr. Shields was not exercising reasonable care. The danger was open and obvious, and it should have been recognized by him.

The facts in this case are similar in many respects to *Thornburg v. State* (1986), 39 Ill. Ct. Cl. 139. In *Thornburg*, a university employee slipped and fell on a stairway at the entrance of a building. The stairway was wet because of heavy snow conditions outside the building. The university recognized its obligation with regard to this condition and had taken steps to remedy it. This is exactly what the staff of Assembly Hall does via their cleanup procedures. Mr. Rhodes testified that the university recognizes the possibility of spills in Assembly Hall, and it uses precautions to try and ensure the safety of invitees. It should be noted that Assembly Hall seats approximately 16,000 people.

We find that the university had taken every reasonable precaution to prevent accidents such as the one that happened to Mr. Shields. As we previously stated, the university is not an insurer.

For the reasons stated above, we hold that the Claimant has failed to show that the State breached its duty of

reasonable care in maintaining the facilities at Assembly Hall. For those reasons, we hereby deny this claim.