NOTICE

Decision filed 05/11/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210264-U

NO. 5-21-0264

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| JOHN KOPIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 18-L-76 |
| | ) | |
| F.B. McAFOOS & COMPANY, | ) | Honorable |
| | ) | Evan L. Owens, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Welch and Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court's findings that the condition of the defendant's patio exit did not pose an unreasonable risk of harm to persons on the property, that the hazard alleged by the plaintiff was open and obvious, and that the plaintiff failed to establish that he was distracted just before he fell, were not against the manifest weight of the evidence, and the judgment in favor of the defendant is affirmed.

¶ 2   The plaintiff, John Kopin, filed a premises liability action against the defendant, F.B. McAfoos & Company, alleging that he sustained serious injuries when he fell as a result of the defendant's failure to maintain the patio exit from its store in a reasonably safe condition for its customers. After hearing evidence in a bench trial, the trial court entered

1

a verdict and judgment for the defendant. The court found that the condition of the patio exit did not pose an unreasonable risk of harm to persons on the property, that the alleged hazard was open and obvious, and that the plaintiff failed to establish that he was distracted just before he fell. On appeal, the plaintiff argues that the trial court's findings are against the manifest weight of the evidence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On July 18, 2018, the plaintiff, then 92 years old, went into the defendant's store to buy a pull cord for his lawn mower. After purchasing the pull cord, the plaintiff left the store, walking through the main door and onto a connected patio. Riding mowers were displayed on the patio. The plaintiff walked around the patio to look at the mowers, and then walked toward a concrete ramp that led to the parking lot. The plaintiff stepped off the patio, intending to walk down the ramp, but his foot missed the ramp and he fell to the ground. He sustained a serious fracture in his left leg.

¶ 5     On November 18, 2018, the plaintiff filed a premises liability action against the defendant. The plaintiff claimed that the defendant failed to exercise ordinary care in maintaining the "area of egress" from the store in a reasonably safe condition. Specifically, the plaintiff alleged the defendant (a) failed to extend the concrete pedestrian ramp across the entire length of the patio exit; (b) failed to adequately warn patrons about the lack of ramp access across the entire patio exit; and (c) failed to place signs, markings, or barriers to channel pedestrian traffic from the patio to the parking lot in a safe manner. The plaintiff further alleged that the defendant knew or should have known that the failure to extend the ramp across the entire length of the patio exit posed a hazard to patrons entering and leaving

2

its store. He sought damages for the serious injuries he sustained as a proximate result of the defendant's failure to maintain its premises in a reasonably safe condition for its customers.

¶ 6     The defendant filed an answer to the plaintiff's complaint, and denied the allegations of negligence. The defendant also raised three affirmative defenses. The defendant alleged that it lacked notice of the hazardous condition alleged by the plaintiff; that the condition encountered by the plaintiff was open and obvious; and that the plaintiff's failure to keep a proper lookout and exercise due care and caution for his own safety contributed in whole or in part to his injuries and damages.

¶ 7     A bench trial was held on July 20, 2021. The plaintiff called Thomas McAfoos as an adverse witness. McAfoos owned the store at the time of the plaintiff's fall. McAfoos did not witness the plaintiff's fall, and he was not aware of any witnesses to the fall. McAfoos testified that he discovered the plaintiff lying on the ground between the store's patio and a disabled parking space. He testified that the plaintiff fell onto a concrete surface near a disabled parking space. He also testified that the surface was not covered in gravel.

¶ 8     During his testimony, McAfoos described the layout of the store at the time of the occurrence. The store was in a large, enclosed building. The primary entrance was on the north side of the building. A covered patio and an access ramp had been added at the north end of the building in 1987. Customers could walk up the ramp from the parking lot to the patio and enter the store through the patio. Merchandise was often displayed on the patio. To guard against theft, fixed railings were installed on the north and east sides of the patio,

and a sliding gate was placed on the west side. The sliding gate was on wheels and was pushed open during business hours.

¶ 9 McAfoos viewed a photograph of the concrete ramp at issue in this case. The photograph (shown below), marked as Plaintiff's Exhibit 1a, was taken by the plaintiff's son, Andrew Kopin, after the store closed on the day that the plaintiff fell. McAfoos testified that the photograph provided a fair and accurate representation of the concrete ramp and patio as it existed at the time of the occurrence.



¶ 10 When the photograph was taken, the sliding gate was closed. McAfoos noted that the sliding gate was pushed open during business hours, so that it was even with the white post bearing the disabled parking sign in the photograph. The parties agreed that the concrete ramp did not extend from the north end of the building to the white post. The

photograph indicated that there was an open space on each side of the ramp. Both parties have referred to the open space circled in the photograph, extending from the left side of the ramp to the white post, as a "step." The yellow circle in the photograph also marked the general area where the plaintiff fell. McAfoos indicated that he measured the rise of this "step." He stated that the rise was between seven and nine inches, acknowledging that the measurement varied due to the slope of the parking lot. McAfoos estimated that the width of the ramp was "about 8 feet," and that the width of the patio between the north end of the concrete ramp and the white support beam was "probably 30 inches."

¶ 11    During questioning by plaintiff's counsel, McAfoos was asked whether there was any reason a permanent railing could not have been installed on the patio to block the step. McAfoos replied, "I suppose not, but then I could not use the step." Counsel asked whether a permanent railing could have prevented someone from falling off the edge of the patio. McAfoos replied that it would have prevented them from using the step, and if a person could not use the step, he could not fall off of it. When asked whether there was any reason not to paint the edge of the step or post a sign to alert customers about the step, he replied, "I suppose not." When questioned by defense counsel, McAfoos testified that he was not aware of any building codes, industry standards or recommendations, or municipal ordinances that required such measures. He also testified that the patio contractor never told him that the ramp should be a different width or located in a different section of the patio.

¶ 12    McAfoos testified that the concrete patio was built more than 10 years before the parking lot. He noted that the concrete in the patio was different from the concrete in the

5

parking lot in terms of the finish, color, and texture. McAfoos testified that he was not aware of a prior incident in which a customer had tripped or fallen in the area where the plaintiff fell. McAfoos noted that the patio was well lit by "natural light." McAfoos stated that there was nothing that would have obstructed a patron's view of the ramp as he walked from the patio to the parking lot. He testified that he had no reason to anticipate that the plaintiff would not have appreciated the presence of the step. He did not think that the step was any different than a step from a curb to a roadway. During redirect, McAfoos stated that a person could get hurt if he fell up or down any step.

¶ 13    The plaintiff testified that on July 18, 2018, he went to the defendant's store to buy a pull rope for his lawn mower. He walked up the concrete ramp from the parking lot to the patio, and he entered the store through the patio door. After the plaintiff purchased the pull cord, he exited the store and stepped onto the patio. The plaintiff noticed lawn mowers and farm equipment displayed on the patio, and he walked around to look at it. Then, he walked along the fence, toward the ramp, to leave. "And I walked over to the ramp, and when I stepped off on the ramp, there was no ramp there, and there was a big opening like." The plaintiff thought he was stepping onto the ramp, and that they "just made it too short." He thought the ramp would be across the width of the patio exit. The plaintiff stated that he was looking at the lawn mowers just before he got to the edge of the patio exit. The plaintiff identified the area where he fell in the photograph marked as Exhibit 1a. He testified that he fell onto a concrete surface, and he thought there was gravel on the concrete.

¶ 14    The plaintiff testified that he broke the femur in his left leg in the fall. He testified that he had extensive medical treatment, including surgery, a series of injections, and physical rehabilitation, to care for his injuries. He stated that he continues to experience pain and physical limitations as a result of his injuries.

¶ 15    During cross-examination, defense counsel often referenced excerpts from the plaintiff's discovery deposition to show that the plaintiff's trial testimony differed from his deposition testimony in regard to a number of pertinent facts, including the location of the plaintiff's fall and the events leading up to his fall. For example, the plaintiff testified at trial that he fell in the area circled in Exhibit 1a. Defense counsel then referenced excerpts from the plaintiff's discovery deposition in which the plaintiff stated that he fell onto a graveled portion of the parking lot, and denied that he fell in the area circled in Exhibit 1a. Counsel asked whether the plaintiff recalled his deposition testimony. In response, the plaintiff acknowledged that it had been a long time since his deposition, and he did not remember that testimony. Later in the cross-examination, the plaintiff testified that when he left the patio, he intended to step onto the ramp. Defense counsel referred to another excerpt from the plaintiff's discovery deposition in which counsel asked whether the plaintiff intended to step down from the patio and onto the parking lot. The plaintiff answered that he "intended to step off there," but he "didn't know it was that far." When asked whether he gave that testimony, the plaintiff replied, "I don't believe I did."

¶ 16    In response to further questioning by defense counsel, the plaintiff testified that when he reached the edge of the patio, he "took it for granted that the concrete ramp was across there," and he did not look down. Later, the plaintiff testified that before he stepped

7

off the patio, "I looked, and that ramp was there, and I just thought the ramp was there, and I stepped off of there, and there was nothing there and down I went." The plaintiff also testified that by the time he stepped down from the patio, he was ready to go home. He acknowledged that the lawn mowers were behind him, and that, to his knowledge, nothing was distracting him. The plaintiff also acknowledged that he had been to the defendant's store about five or six times a year for a period of 10 years, that he used the ramp to enter and exit the patio, and that he had not fallen during his prior visits. The plaintiff noted that during prior visits, he walked directly from the building to the ramp, and that on the day of the fall, he approached the ramp from a different direction.

¶ 17    During redirect, the plaintiff indicated that when he gave his discovery deposition, he was sometimes confused by the questions. The plaintiff testified that he intended to step from the patio to the ramp. When counsel asked whether the plaintiff was looking at the mowers immediately before he took the step off of the patio, the plaintiff replied, "Maybe some and then watching where I was going too at the same time, because I was at the end of the fence."

¶ 18    The plaintiff's son, Andrew Kopin, also testified in the plaintiff's case. Andrew authenticated the photograph marked as Plaintiff's Exhibit 1a, and other photographs he took on the day of the plaintiff's fall. He also described the physical limitations of his father after the fall. The plaintiff offered medical records, medical bills, and the discovery depositions of two treating physicians.

¶ 19    At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The defendant's motion was denied. The defendant briefly recalled Thomas McAfoos as a

8

witness. McAfoos testified that the plaintiff did not fall on a graveled surface, and that no one from his store swept gravel from that area after the occurrence. At the close of the evidence, the trial court heard closing arguments and took the matter under advisement.

¶ 20 On July 21, 2021, the trial court issued a verdict and judgment in favor of the defendant. After considering the evidence presented at trial, the court found that the "step down" to the parking lot was an open and obvious condition, and that the "step down" or "step down/ramp" combination did not pose an unreasonable risk of harm to persons on the property. The court also found that the plaintiff failed to prove that he was distracted at the time of the occurrence. The court noted that the plaintiff had been impeached with testimony from his discovery deposition, and that it was apparent that the plaintiff was "unclear as to exactly what occurred." In addition, the court found that the plaintiff failed to exercise ordinary care for his own safety and that his negligence was the proximate cause of the fall and subsequent injury. The plaintiff filed a motion to reconsider. The trial court denied the motion. This appeal followed.

¶ 21                                        II. ANALYSIS

¶ 22 On appeal, the plaintiff contends that the trial court's findings are against the manifest weight of the evidence. The plaintiff claims that the defendant had a duty to keep its premises in a reasonably safe condition for invitees, and that the step and ramp from the patio to the parking lot posed an unreasonably dangerous condition for the plaintiff and other invitees. The plaintiff also claims that the defendant could have reasonably foreseen that customers would be distracted by the mowers displayed on the patio and failed to discover and appreciate the potential hazard posed by the unmarked step, and that the

9

evidence proved that the plaintiff was actually distracted by the mowers just prior to his fall.

¶ 23　To prevail on a premises liability action, like any other negligence action, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990). In determining whether a duty exists, the trial court considers whether a relationship existed between the parties such that the law imposed an obligation of reasonable conduct upon the defendant for the benefit of the plaintiff. *Ward*, 136 Ill. 2d at 140. Four factors guide the duty analysis: the reasonable foreseeability of the injury; the likelihood of the injury; the magnitude of the burden of guarding against the injury; and the consequences of placing that burden on the defendant. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 14. The weight accorded these factors depends on the circumstances in a given case. *Bruns*, 2014 IL 116998, ¶ 14. Whether a duty was owed in a particular case is a question of law that is reviewed *de novo. Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 445 (1996). Whether a duty was breached and whether the breach was a proximate cause of the plaintiff's injuries are questions to be decided by the trier of fact. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43-44 (2004).

¶ 24　In a bench trial, it is the function of the trial court to weigh the evidence and make findings of fact. The trial court's findings of fact will not be reversed on appeal unless those findings are against the manifest weight of the evidence. *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 91. Findings are against the manifest weight of the evidence only when it is apparent from the record that the court should have reached the opposite

10

conclusion or when the findings are unreasonable, arbitrary, or not based on the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). Reviewing courts give deference to the trial court's findings of fact because the trial court has the opportunity to observe the witnesses as they testify and is in a better position to assess the weight and credibility of the witnesses and resolve conflicts in the evidence. *Walker v. Chicago Housing Authority*, 2015 IL App (1st) 133788, ¶ 47.

¶ 25    In this case, the plaintiff brought an action under a theory of premises liability, and alleged that he was injured due to an unreasonably dangerous condition on the defendant's property. Generally, the owner or operator of a business has a duty to maintain its premises in a reasonably safe condition for its customers. *Ward*, 136 Ill. 2d at 141. However, a property owner is generally not required to foresee and protect against an injury where a potentially dangerous condition is open and obvious.[1] *Bruns*, 2014 IL 116998, ¶ 16; *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003). This is because the open and obvious nature of the condition itself gives caution, and therefore, the risk of harm is considered slight because people are expected to appreciate and avoid obvious risks. *Bucheleres*, 171 Ill. 2d at 448; *Ward*, 136 Ill. 2d at 148. That said, the existence of an open and obvious danger is not an automatic bar to finding a legal duty on the part of a defendant. *Bruns*, 2014 IL 116998, ¶ 19. An exception to the open and obvious rule may apply where

---

[1]Our supreme court adopted the open and obvious rule set forth in section 343A(1) of the Restatement of (Second) of Torts (Restatement (Second) of Torts § 343A(1) (1965)). See *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 434-35 (1990). Section 343A(1) provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (1965).

the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious or will forget what he has discovered or fail to protect himself from it. *Bruns*, 2014 IL 116998, ¶ 20. The distraction exception may apply where the evidence shows that the plaintiff was distracted due to the presence of some circumstance that required the plaintiff to divert his attention from the open and obvious danger, or otherwise prevented him from avoiding the risk. *Bruns*, 2014 IL 116998, ¶¶ 22, 28. There must be evidence from which the court can infer that the plaintiff was actually distracted, and the distraction must have been reasonably foreseeable to the defendant. *Bruns*, 2014 IL 116998, ¶¶ 22, 28-29.

¶ 26    In this case, the trial court, sitting as the trier of fact, considered the evidence and found that the plaintiff failed to establish that the condition of the step or the step/ramp combination presented an unreasonable risk of harm to invitees. After reviewing the record, we cannot say that the trial court's finding was against the manifest weight of the evidence. The plaintiff presented no evidence to show that the stair or stair/ramp combination were improperly designed or built. The plaintiff offered no expert testimony or other evidence to establish that the configuration of the ramp, *i.e.*, the failure to extend it across the entire width of the patio exit, was not in compliance with any applicable municipal ordinances, building codes, or industry standards or recommendations. The plaintiff offered no expert testimony or other evidence to show that the configuration or location of the step was out of compliance with any such ordinances, codes, or industry standards or recommendations. Additionally, the plaintiff offered no expert testimony or any applicable ordinances, codes, or industry standards requiring or recommending the posting of signs or paint to warn

12

persons of the edge of the patio. There was no evidence that the step was obscured or concealed from the view of customers leaving the store through the patio. The plaintiff testified that he had used the ramp many times before and he was aware of the location of the step and the ramp. There was no evidence that the defendant had prior notice of any falls or complaints in this area where the plaintiff fell. It was the plaintiff's burden to establish by a preponderance of the evidence that a condition of the subject step or the step/ramp combination posed an unreasonable risk of harm to persons on the property, and he simply did not meet that burden in this case. Even if the condition of the step or the step/ramp combination posed a hazard, there was no evidence in the record to show that it was other than an open and obvious hazard.

¶ 27　In addition, the plaintiff failed to establish that the distraction exception was applicable. Counsel for both parties asked the plaintiff whether he was distracted just prior to his fall. When questioned by his counsel, the plaintiff stated that immediately before he stepped off of the patio, he was looking at the mowers and watching where he was going at the same time. When questioned by defense counsel, the plaintiff testified that the lawn mowers were behind him before he stepped off the patio, and to his knowledge, nothing was distracting him. The trial court, as the trier of fact, had the opportunity to observe the plaintiff as he testified. The trial court found that the plaintiff was "unclear" about what happened that day, other than that he fell and was injured. The trial court's findings are supported by the testimony in the record.

¶ 28                                    III. CONCLUSION

¶ 29    After considering the testimony, the trial court determined that the plaintiff failed to meet his burden to present evidence to demonstrate that the defendant breached its duty of care in this instance. After reviewing the record, we cannot say that the trial court's findings were unreasonable, arbitrary, or not based on the evidence presented at trial.

¶ 30    Accordingly, the judgment of the trial court is affirmed.


¶ 31    Affirmed.