In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-4169, 98-4222

ROBERT E. COOPER and MARIANN POGGE, Trustee
of the Bankruptcy Estate of Robert E. Cooper,

Plaintiffs-Appellants, Cross-Appellees,

v.

CARL A. NELSON & CO., a corporation,

Defendant-Appellee, Cross-Appellant.


Appeal from the United States District Court
for the Central District of Illinois.
No. 94-1274--Joe B. McDade, Chief Judge.


Argued September 16, 1999--Decided March 7, 2000


Before RIPPLE, MANION and DIANE P. WOOD, Circuit
Judges.

RIPPLE, Circuit Judge. Robert E. Cooper/1
brought this personal injury action against Carl
A. Nelson & Co. ("Nelson"), seeking damages for
an accident at a construction site. The case
proceeded to trial, and a jury verdict was
entered for Nelson. For the reasons set forth in
the following opinion, we reverse the judgment of
the district court and remand the case to the
district court for proceedings consistent with
this opinion.

I

BACKGROUND

A. Facts

Nelson was the general contractor at the
construction of a new Wal-Mart in Macomb,
Illinois. Mr. Cooper was an electrician working
for one of Nelson's subcontractors. Workers at
the site were encouraged by Nelson to park in a
vacant lot at the existing Wal-Mart adjacent to
the construction site./2 This arrangement
required that they traverse a drainage ditch to
access the construction trailers. The bottom of
the ditch was spanned by planks, so that the
construction workers would not have to walk

through the bottom of the ditch. Rather, they had to walk down an incline and then across the planks and up an incline on the other side. The incline down to the planks became muddy whenever it rained, and it was difficult to maintain footing. Consequently, Nelson laid pallets in this area to afford workers additional traction. The exact nature of the plank bridge and the condition of the bottom of the ditch were subjects of some dispute in the district court.

On July 7, 1992, Mr. Cooper slipped and fell while traversing this drainage ditch. He claims to have been knocked unconscious in his fall, and does not recall exactly where he was when he fell. He testified that it was raining at the time of his accident and that both the ditch and the planks were wet and slippery.

B. Proceedings in the District Court

Mr. Cooper's initial amended complaint alleged that he fell on the planks over the bottom of the ditch. During discovery, he acknowledged that he was not certain about the exact place of his fall. He did not, however, further amend his complaint to reflect this uncertainty. In ruling on a motion for summary judgment filed by Nelson, the district court determined that Mr. Cooper's claim could not be sustained on the theory that he had fallen on the planks themselves and, therefore, granted summary judgment for Nelson.

The district court noted, however, that the evidence produced at discovery suggested that Mr. Cooper had fallen on the incline leading down toward the location of the planks across the bottom of the ditch. The district court therefore vacated its grant of summary judgment and allowed Mr. Cooper to amend his pleadings to allege that he had fallen on the incline. In the new amended pleading, Mr. Cooper alleged that he had fallen on the muddy incline approaching the planks in the ditch, not on the planks themselves.

Nelson later sought, through a motion in limine, to preclude at trial any mention of Mr. Cooper's having fallen on the planks. The district court granted the motion. The district court noted that the allegation in the second amended complaint was that Mr. Cooper fell on the incline approaching the planks and ruled that Mr. Cooper ought to be bound at trial by that allegation.

Mr. Cooper sought to introduce at trial the deposition testimony of medical professionals who had examined him. Among those experts were Dr. William Richardson, a specialist in internal medicine affiliated with the St. Louis University School of Medicine; Dr. Emre Kokmen, a board

certified neurologist at the Mayo Clinic in Rochester, Minnesota; and Dr. Joshua Warach, a board certified neurologist in Springfield, Illinois. After a hearing to determine the admissibility of this testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the district court decided that the testimony was not admissible because the physicians had an inadequate foundation for evaluating the cause of Mr. Cooper's injury. Specifically, the district court pointed to the physicians' finding that Mr. Cooper's 1992 fall was the cause of his chronic pain syndrome and other ailments. That finding was based on Mr. Cooper's own statements to the physicians that he had fallen in 1992, that before his fall he had been healthy, and that after his fall his physical condition had deteriorated.

Mr. Cooper also argued that, in addition to the medical experts, Robert Bunch, a carpenter for Nelson, should have been allowed to testify about when a proper man bridge was built across the ditch. Terry Lox, a supervisor for Nelson, was allowed to testify that at the time of Mr. Cooper's accident there was a man bridge across the ditch, not merely some planks. Bunch would have testified that he assisted in the construction of a proper bridge after the accident. The district court excluded the testimony as evidence of a subsequent remedial measure. See Fed. R. Evid. 407. The district court also excluded a report from the Social Security Administration finding that Mr. Cooper was entitled to total disability benefits.

At the close of Mr. Cooper's case, the district court granted Nelson summary judgment on Mr. Cooper's claim that Nelson had willfully and wantonly caused his injury. The case proceeded on Mr. Cooper's negligence theory. After the presentation of Nelson's case, the district court instructed the jury that Nelson's duty was that of a landowner. Mr. Cooper objected, claiming that the contractor should not have been held to the "passive" duty of care of a landowner, but rather to a more active duty of ordinary care. The jury returned a verdict for Nelson.

II

DISCUSSION

Mr. Cooper raises six distinct issues on appeal. He argues that the district court incorrectly granted summary judgment on the issue of the place of the fall, that it administered faulty jury instructions, and that it should not have dismissed his willful and wanton injury claim. The other three challenges relate to the district

court's evidentiary decisions: the rejection of Robert Bunch's testimony, the refusal to admit the Social Security Administration report, and the decision under Daubert to exclude his proffered medical testimony. We consider these contentions in turn.

A.  Mr. Cooper's Fall

Mr. Cooper cannot remember whether he fell on the slope approaching the planks over the ditch or on the planks themselves. He originally claimed that he slipped on the planks, but the district court granted summary judgment for Nelson on the ground that the evidence did not support such an allegation but rather tended to show that he slipped on the incline approaching the location of the planks. Mr. Cooper then amended his pleading to state that he had slipped on the incline. Later, the court granted Nelson's motion in limine to prevent Mr. Cooper from offering testimony suggesting that he slipped on the planks.

Before this court, Mr. Cooper submits that the district court erred when it decided to take the issue of whether he fell on the planks away from the jury on the ground that there was no evidence to support a verdict for Mr. Cooper on that theory. First, contends Mr. Cooper, the district court ought not to have granted summary judgment to Nelson on the ground that the amended complaint alleged solely that Mr. Cooper had fallen on the planks, not the incline. Second, continues Mr. Cooper, this initial error was compounded when the district court, although allowing an amendment of the pleadings, refused, by granting the motion in limine, to allow the jury to consider the possibility that he fell on the planks. Mr. Cooper admits that his second amended complaint, filed with leave of court after the district court had granted summary judgment on the first amended complaint, alleged only that he had slipped on the incline, not on the planks. He asks us to take into account, however, that this complaint was filed only after the district court had ruled that the evidence would not support a jury finding that he had slipped on the planks. Therefore, he submits, its content was governed by the law of the case as established in the district court's earlier ruling.

Nelson replies that there was no evidence to establish that Mr. Cooper slipped on the planks and that the district court was therefore justified in ruling as it did. It argues that, in response to Nelson's summary judgment motion, Mr. Cooper admitted that he had not fallen on the planks but on the incline leading to the planks.

Indeed, even on this appeal, argues Nelson, Mr. Cooper argues only that it is "just as likely" that he fell on the planks as on the incline.

We believe that the district court should not have precluded the jury from considering the possibility that Mr. Cooper fell on the planks. In the first amended complaint, Mr. Cooper alleged, in more detail than was required by the Rules, that he had "slipped among planks while carrying materials for use on the job site walking down the incline approaching the six foot deep ditch and then fell onto the plank boards which were inadequate to hold him and then onto pallets laying in the ditch six feet below." R.85 at 9-10. When this allegation was challenged by Nelson on summary judgment, Mr. Cooper admitted that "[h]e did not fall on the planks. He fell among the pallets located on the incline."/3 In the very same document, however, indeed, in the preceding paragraph, Mr. Cooper gave a more plenary description of his recollection of the fall:

9. He cannot say exactly where he fell because he was knocked out by the fall. He remembers coming off the flat ground getting ready to go down the ditch; he remembers starting down the incline. He could have been on the 2 by 10 planks when he fell, but he cannot honestly answer yes or no. (Cooper dep. 32)./4

The district was correct when it concluded that Mr. Cooper's initial amended complaint had been too specific when it alleged only that he had slipped on the incline./5 However, we think that the district court went too far in its criticism when it further concluded that the evidence of record, including Mr. Cooper's own deposition testimony, precluded the jury from considering the possibility that he fell among the planks.

This misapprehension on the part of the district court was partially corrected when the court allowed Mr. Cooper to amend his complaint. Unfortunately, as we see it, even at this stage the district court's actions placed, as a practical matter, inappropriate restrictions on Mr. Cooper's effort to replead. The critical document is the January 16, 1996 summary judgment order; to get back into court, Mr. Cooper had to overcome the deficiencies perceived by the district court in his first amended complaint. That summary judgment order was the only guidance Mr. Cooper had on how he might revive his case. In that document, the district court had not only rejected the possibility that the jury might conclude that he fell on the planks, it also expressed clearly its own view of what the evidence might show:

Defendant contends that Plaintiff cannot show proximate cause here because there is no evidence that the planks over the ditch had anything to do with Plaintiff's injury. Plaintiff does nothing to refute this claim. Rather, Plaintiff merely changes the relevant facts in his Statement of Disputed Facts, asserting that "[h]e did not fall on the planks. He fell among the pallets located on the incline." If the Court were to focus upon these newfound facts, it would hold that the testimony evinced during discovery is enough to preclude summary judgment here. The theory would be that Defendant's failure to remedy the unsafe condition of the entire pathway (the inclines, the pallets and the planks) during rainy periods caused Cooper to traverse the incline on the mud, thus causing him to slip and injure himself.

R.105 at 19-20 (emphasis added). As we have noted earlier, this statement of the district court was Mr. Cooper's only guidance on how to restart his case. From our review of the record, we must conclude, however, that the district court's estimation of Mr. Cooper's case in that summary judgment order rested on a misapprehension of the record. For instance, although the court correctly noted that "He testified that he fell somewhere between the beginning of the slope to halfway down the slope," Mr. Cooper also said that he fell somewhere "between the crest of the slope and halfway across the planks." Cooper deposition at 39 (quoting the original complaint). We cannot say that Mr. Cooper's deposition testimony is accurately reported in the court's statement that "Plaintiff knows that he fell somewhere between the top of the incline and half way down." R.105 at 20. Similarly problematic is the district court's assertion that "It is undisputed that Plaintiff did not slip or fall on the planks themselves." Id. at 21. Mr. Cooper said specifically that he "could have been" on the planks when he fell. Cooper deposition at 32. His testimony was at least partially corroborated by the deposition testimony of his brother, whose testimony as to Mr. Cooper's position after the fall at least allowed the inference that he had fallen backward from the planks onto the pallets.

As a general proposition, a district court has the discretion to treat an allegation in a party's pleading as a judicial admission. See Taylor v. Monsanto Co., 150 F.3d 806, 809 (7th Cir. 1998); Schott v. American Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992). A judicial admission trumps evidence. See Murrey v. United States, 73 F.3d 1448, 1455 (7th Cir. 1996); Keller v. United States, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Here, however, it would be

inappropriate to treat the allegations in the second amended complaint as a binding admission that ought to bind Mr. Cooper in the subsequent trial. The allegations of that second amended complaint are grounded in the district court's earlier ruling that the evidence would not support a jury finding that Mr. Cooper fell on the planks, a ruling we think was based on a misapprehension of the record. As we have noted above, we believe that the evidence of record made the exact place of the fall a jury issue that ought not to have been excluded from the trial of this matter.

Nelson argues that we should not consider Mr. Cooper's argument that he fell on the planks rather than the incline. Nelson contends that, if Mr. Cooper wanted to preserve the option of making such an argument, he should have appealed the district court's initial grant of summary judgment rather than seeking permission to replead in conformity with the district court's view of the evidence. Because, in any event, the judgment under review cannot stand due to instructional and evidentiary error, we believe that, in a retrial of the case, none of the policy concerns animating the law of the case doctrine require that the district court's initial misapprehension of the evidence ought to control. See Alston v. King, 157 F.3d 1113, 1116 (7th Cir. 1998) (holding that the law of the case is only a presumption whose strength varies with circumstances); see also United States v. United States Smelting Co., 339 U.S. 186, 199 (1950).

B. Nelson's Duty of Care and the
Resulting Jury Instructions

In this diversity case, the nature of Nelson's duty to Mr. Cooper is governed by Illinois law, and in Illinois the existence of a duty is a question of law. See Reid v. Norfolk & W. Ry. Co., 157 F.3d 1106, 1110 (7th Cir. 1998); Rodriguez v. Norfolk & W. Ry. Co., 593 N.E.2d 597, 607 (Ill. App. Ct. 1992). We review such questions de novo. See Khan v. Gallitano, 180 F.3d 829, 837 (7th Cir. 1999). Although the existence of a duty must be determined as a matter of law, the question of whether there was a breach of that duty and an injury proximately caused by that breach are questions of fact for the jury. See Rodriguez, 593 N.E.2d at 607. An error in jury instructions therefore can be reversible error if it misinforms the jury about the applicable law. See Bruno v. City of Crown Point, 950 F.2d 355, 360 (7th Cir. 1991), cert. denied, 505 U.S. 1207 (1992); Schranz v. Halley, 448 N.E.2d 601, 603 (Ill. App. Ct. 1983).

The district court's instructions to the jury

asked it to consider whether Nelson had exercised reasonable care, the standard applied to landowners in Illinois for injuries occurring on their land. See Lewis E. v. Spagnolo, 710 N.E.2d 798, 815 (Ill. 1999); Ward v. K-Mart Corp., 554 N.E.2d 223, 229 (Ill. 1990). Illinois has adopted the rules set forth in sections 343 and 343A of the Restatement (Second) of Torts regarding the duty of possessors of land to their invitees. Therefore, as a general rule, a landowner in Illinois is only liable for harm caused to invitees by a condition on his land if he:

(a)  knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b)  should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c)  fails to exercise reasonable care to protect them against the danger.

Genaust v. Illinois Power Co., 343 N.E.2d 465, 472 (Ill. 1976) (quoting Restatement (Second) of Torts sec. 343); see also Deibert v. Bauer Bros. Const. Co., 566 N.E.2d 239, 241 (Ill. 1990) (quoting Genaust); Ward, 554 N.E.2d at 229 (same). As a general rule, therefore, landowners in Illinois are not liable to invitees when invitees should have realized the danger and could have protected themselves against it; the landowner's duty is only to rid the land of unreasonable dangers. As the Supreme Court of Illinois pointed out in Deibert, this general rule is subject to an exception set forth in sec. 343A of the Restatement. See 566 N.E.2d at 243. That section states:

A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts sec. 343A(1), at 218 (1965), quoted in 566 N.E.2d at 241. In the case before us, the general contractor, Nelson, stands in the place of the landowner and, for purposes of our analysis, is the possessor of the land. See Deibert, 566 N.E.2d at 240-43.

We think that two considerations lead to the conclusion that the duty of Nelson was not simply that set forth in sec. 343 of the Restatement (Second) of Torts. First, as the Supreme Court of Illinois made clear in Deibert, the duty of the landowner is set forth not only in sec. 343 but

also in the exception to that general rule in sec. 343A. See id. at 241-42. This latter provision requires that the possessor of the land remedy an activity or condition on the land which, although known and obvious to the invitee, may still cause that individual harm. Here, Nelson had undertaken to construct a walkway of pallets to permit the workers to traverse the incline and a bridge of planks to cross the bottom of the ditch. According to the evidence of record, the jury was entitled to believe Mr. Cooper's allegations that the wooden walkway had become so muddy that he was required to walk down the unprotected incline which also posed a danger because of its muddy condition. The jury was entitled to consider whether the condition of the premises was such that Nelson was required to anticipate that workers such as Mr. Cooper might avoid the mud on the pallets and consider the unprotected incline to be at least as safe a passage as the one prepared by Nelson.

Second, the contractual provision governing the relationship of the general contractor, Nelson, to the subcontractor also appears to have set a standard of care somewhat higher than the one set forth in the Restatement sections. The contractual provision states that the contractor "shall take reasonable precautions for safety of . . . employees on the Work," Appellant's Br. at 21. In interpreting this section, we must be careful not to interpret the contractual provisions in such a way as to expand the duties of the contractor beyond the scope of the duties described in the contract. See American States Ins. Co. v. A.J. Maggio, Inc., 593 N.E.2d 1083, 1086 (Ill. App. Ct. 1992)./6 In American States, the Illinois court determined that a contractual provision that imposed a duty to keep the work area in reasonably safe condition imposed no greater duty on the possessor of the land than the common law duty stated above. By contrast, the contractual duty here places the affirmative duty on the possessor of the land "to take reasonable precautions" for the safety of the workers. In our view, the jury was entitled to consider whether Nelson had breached its obligation by the manner in which the pallet walkway was constructed or by permitting its condition to deteriorate.

In Ward, the Supreme Court of Illinois noted that, in ascertaining whether a possessor of land owes a duty of care to an invitee, a court must take into consideration the magnitude of the burden of guarding against the injury, and the consequences of placing that burden upon the defendant, as well as the likelihood of injury and the possible serious nature of such an injury. See 554 N.E.2d at 226-27. Here, the

existence of a duty of care cannot be decided in abstracto but must take into account the relationship of the contractor to the subcontractor and the undertakings of the former for the employees of the latter. Here, the allegation is that the prime contractor breached its obligation to these employees, including Mr. Cooper, by failing to maintain a proper walkway to the job site, by permitting it to become covered with quantities of mud that rendered it useless, and by requiring the workers to try other ways of making the same passage. In our view, these allegations implicate the policy concerns noted by the Supreme Court of Illinois in much the same way as those cases that articulate a higher standard of care for landowners who place a foreign substance on their land. See Donoho v. O'Connell's, Inc., 148 N.E.2d 434, 439 (Ill. 1958); Wind v. Hy-Vee Food Stores, Inc., 650 N.E.2d 258, 262 (Ill. App. Ct. 1995).

On the record before us, therefore, we must conclude that the jury was not instructed properly with respect to whether Nelson had breached its duty of care./7

C. Mr. Cooper's Willful and Wanton Claim

At the close of Mr. Cooper's evidence, the district court granted a directed verdict for Nelson on Mr. Cooper's willful and wanton claims. We review de novo the decision to grant a directed verdict, reviewing the evidence in the light most favorable to Mr. Cooper. See Payne v. Milwaukee County, 146 F.3d 430, 432 (7th Cir. 1998); Bowlen v. United States, 956 F.2d 723, 727 (7th Cir. 1992).

Because we believe that Mr. Cooper ought to be permitted to argue that he fell on the planks over the ditch, not on the slope approaching the planks, we also believe that the directed verdict on the issue of whether Nelson willfully and wantonly caused his injury cannot stand at this point in the litigation. The district court will have to revisit this matter in due course. To prevail on this theory, Mr. Cooper must show either that Nelson actually or deliberately intended to harm him, or that Nelson was utterly indifferent to or showed a conscious disregard for his personal safety. See Pfister v. Shusta, 657 N.E.2d 1013, 1016 (Ill. 1995); Bowden v. Cary Fire Protection Dist., 710 N.E.2d 548, 552 (Ill. App. Ct. 1999). Relying on the testimony of other construction workers at the site, he argues that, when a landowner knows of a dangerous condition and fails to remedy it, he has exhibited a reckless disregard for the safety of others that leads to his liability for willful or wanton injuries. See Schneiderman v. Interstate Transit

Lines, 69 N.E.2d 293, 300 (Ill. 1946). As we have held in the preceding section, Mr. Cooper ought to be permitted to argue that he slipped not on the incline but on the planks. Therefore, he should not be foreclosed from arguing that Nelson's decision to utilize this configuration rather than a man bridge constituted willful or wanton behavior.

D.  Testimony of Robert Bunch

Although the matter may not arise again in the same context, we shall address, for the sake of judicial economy, the district court's decision not to admit the testimony of Robert Bunch that a man bridge was built over the area after Mr. Cooper's fall.

The district court admitted testimony from Terry Lox, a Nelson supervisor, that on the day of Mr. Cooper's injury, the ditch was spanned not by planks, but by a man bridge. The court instructed the jury that it was to consider Lox's testimony only for the purposes of determining Lox's credibility. The testimony was limited because, in light of the determination that Mr. Cooper slipped on the incline, the exact nature of the bridge at the time of the incident was irrelevant. Mr. Cooper then sought to contradict Lox through testimony by Robert Bunch, another worker at the site, that Bunch assisted Lox with the construction of a bridge after Mr. Cooper's injury. The district court would not allow this testimony pursuant to Federal Rule of Evidence 407, which bars testimony about subsequent remedial measures for the purposes of proving negligence. The district court's rulings on evidentiary decisions are reviewed for an abuse of discretion. See White v. United States, 148 F.3d 787, 791 (7th Cir. 1998); United States v. Beyer, 106 F.3d 175, 179 (7th Cir. 1997).

The district court did not abuse its discretion in excluding Bunch's testimony. There was nothing to prevent Mr. Cooper from contradicting Lox's story, or attacking Lox's credibility, by introducing evidence that there was no bridge at the time of Mr. Cooper's injury. At Bunch's deposition, Mr. Cooper's counsel did not ask Bunch to describe the condition of the ditch before the accident, which would have been permissible. Instead, he asked Bunch to describe his assistance with the construction of a bridge after the accident, which was not. The district court did not abuse its discretion in excluding the evidence.

E.  The Social Security Administration Report

Mr. Cooper sought to introduce a Social Security Administration report, pursuant to Federal Rule of Evidence 803(8)(C), the hearsay exception for government reports. An administrative law judge of the Social Security Administration determined that Mr. Cooper's chronic pain syndrome entitled him to total disability benefits. His counsel explained that he wished to argue to the jury that Mr. Cooper's eligibility for social security disability payments demonstrated the severity of his injury and, therefore, was relevant to the measure of damages. The district court refused to admit the report into evidence, finding it both irrelevant and more prejudicial than probative pursuant to Federal Rule of Evidence 403. When reviewing the district court's evidentiary decisions, we employ an abuse of discretion standard and consequently give great deference to the trial court. See Merriweather v. Family Dollar Stores of Ind., 103 F.3d 576, 580 (7th Cir. 1996); Littlefield v. McGuffey, 954 F.2d 1337, 1342 (7th Cir. 1992).

We have noted that the district court retains significant discretion to exclude administrative findings that meet the standards of Federal Rule of Evidence 803(8)(C). See Halloway v. Milwaukee County, 180 F.3d 820, 827 n.9 (7th Cir. 1999); see also Johnson v. Yellow Freight Sys., 734 F.2d 1304, 1309 (8th Cir.) ("In our view, it would be ill-advised to shackle the discretion of trial judges with a rule of per se admissibility."), cert. denied, 469 U.S. 1041 (1984). Evidence admissible under Rule 803(8)(C) is still subject to exclusion on other grounds, such as relevancy. See Beech Aircraft v. Rainey, 488 U.S. 153, 167–68 (1988); Paolitto v. John Brown E.&C., Inc., 151 F.3d 60, 64 (2d Cir. 1998). The district court here decided that a finding that Mr. Cooper met the Social Security Administration's definition of totally disabled was irrelevant because the jury would be applying a different standard. Our review of the record leaves us with some doubt, however, as to whether the district court and counsel miscommunicated about the narrow purpose for which Mr. Cooper sought admission of the document. Even on this narrow ground, the district court may have believed that any probative value of the report was outweighed by its potential to confuse the jury. If the issue arises again on remand, the district court is free to revisit the issue.

F.  Medical Expert Testimony

At trial, Mr. Cooper attempted to establish that he was suffering from chronic pain syndrome ("CPS") and that this condition was caused by his fall. He offered the testimony of three medical expert witnesses to substantiate his submission.

The three witnesses--Dr. William Richardson, Dr. Emre Kokmen, and Dr. Joshua D. Warach--were prepared to testify about the CPS suffered by Mr. Cooper. The parties agreed that the district court's decision on the admissibility of Dr. Richardson's testimony also would apply to Dr. Kokmen and Dr. Warach because the question considered by the court--the propriety of reliance on Mr. Cooper's statements to the physicians in determining causation--was the same for each of them.

The district court refused to admit the testimony. Because each physician relied on Mr. Cooper's statements about his past medical history as the basis for a diagnosis that Mr. Cooper's fall caused his CPS, the district court concluded that the physicians had no scientific basis for their testimony. We believe that the district court assumed an overly aggressive role as "gatekeeper" and that the jury ought to have been allowed to assess the physicians' assertion that trauma from the fall caused Mr. Cooper's pain.

Dr. Richardson, a pain specialist associated with St. Louis University, treated Mr. Cooper for chronic pain, beginning on August 30, 1994. In his deposition testimony, he stated that trauma is a recognized cause of chronic pain syndrome. He also described his examination of Mr. Cooper, which included a physical examination and a self-reported medical history from the patient. In the course of that medical history, Mr. Cooper told him about his fall at the Nelson construction site. Mr. Cooper also told Dr. Richardson that, after the accident, he began experiencing pain in his mid-thoracic area, his buttocks and thighs, his right leg, his neck, and his shoulders, and that he also suffered headaches. In his diagnosis, Dr. Richardson concluded that Mr. Cooper was suffering from chronic musculoskeletal pain. Dr. Richardson further said that, based on Mr. Cooper's statement that he had been free of pain before the fall, the pain was caused by the fall. Dr. Richardson also explained that the cause of Mr. Cooper's trauma was irrelevant to him in prescribing a course of treatment and that, therefore, he did not inquire further as to the cause of Mr. Cooper's CPS.

The district court, attempting to fulfill the mandate of  Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), essentially identified four issues that it believed needed to be resolved before Dr. Richardson's testimony could be admitted. Those issues were:

1)  Is there a scientific basis for diagnosing

a patient as having chronic pain syndrome?

    2) If so, is there a scientific basis for finding that trauma could cause chronic pain syndrome?

    3) If so, is there a scientific basis for finding that Mr. Cooper has chronic pain syndrome?

    4) If so, is there a scientific basis for finding that Mr. Cooper's chronic pain syndrome was caused by trauma?

As this case comes to us, Nelson has admitted that the diagnosis of CPS is generally, although not universally, recognized among members of the medical profession. It recognizes that, among physicians who believe that CPS is a disease, trauma is generally recognized as a cause of that condition. It also acknowledges that Dr. Richardson may have employed a differential diagnosis to determine whether Mr. Cooper suffers from CPS. Nelson therefore asks us to focus on the fourth inquiry: whether there was a scientific basis for concluding that Mr. Cooper's CPS was caused by the fall down the hill. Nelson contends that not only could Dr. Richardson not rely on a patient's statements to prove causation, but, in this case, Mr. Cooper had lied about the nature of the incident that allegedly caused his injuries and had lied further about being free of pain before the incident. Nelson contends, therefore, that the court properly refused to admit Dr. Richardson's testimony on the issue of causation.

More specifically, Nelson stresses that Dr. Richardson admitted that not all CPS patients can point to a particular event as the cause of their condition and further admitted that emotional factors have been known to play a role in the onset of the condition. Nelson further contends that Dr. Richardson had not taken into account the possible effect of such other factors in Mr. Richardson's life on the onset of the condition. Indeed, argues Nelson, Dr. Richardson made no critical evaluation of the cause of Mr. Cooper's CPS because it was not necessary to his treatment of the condition that he know with any certainty its cause. Before this court, Nelson argues that Dr. Richardson's "post hoc, propter hoc" determination of cause, although perhaps an acceptable methodology in cases in which the mechanism of injury is understood, is not adequate in cases such as this one in which that mechanism is not understood.

We think that Nelson suggests, in the context of this case, an overly demanding gatekeeping role

for the district court. Indeed, Nelson seems to agree that, in clinical medicine, the methodology of physical examination and self-reported medical history employed by Dr. Richardson is generally appropriate. Although it disputes the acceptability of such an approach in the case of conditions whose etiologies are less specific, it suggests no alternative that could be employed by the conscientious clinical physician in this situation. Certainly, when the asserted cause of the patient's condition is a phenomenon that requires specialized scientific knowledge, "an insightful, even an inspired, hunch" will not suffice. Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 319 (7th Cir.) (testimony of treating physician that nicotine patch worn for three days was a cause for myocardial infarction properly excluded), cert. denied, 519 U.S. 819 (1986). See also Bradley v. Brown, 42 F.3d 434, 438 (7th Cir. 1994) (testimony of physician that multiple chemical sensitivity was the result of pesticide exposure properly excluded); O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1107 (7th Cir.) (physician's testimony that radiation exposure caused plaintiff's cataracts properly excluded), cert. denied, 512 U.S. 1222 (1994); Porter v. Whitehall Labs., Inc., 9 F.3d 607, 614 (7th Cir. 1993) (treating physician's testimony that renal failure caused by ibuprofen was properly excluded). In Rosen, Chief Judge Posner emphasized that the purpose of the rule announced in Daubert "was to make sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." 78 F.3d at 318. Indeed, Rule 703 of the Federal Rules of Evidence explicitly permits reliance on material "reasonably relied upon by experts in the particular field in forming opinions or inferences." Fed. R. Evid. 703. Our case law has recognized that experts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion. See United States v. Lundy, 809 F.2d 392, 395-96 (7th Cir. 1987) (noting that arson experts regularly rely upon "interviews with many witnesses to a fire" as a "standard investigating technique in cause and origin inquiries"); see also United States v. Lawson, 653 F.2d 299, 302 n.7 (7th Cir. 1981), cert. denied, 454 U.S. 1150 (1982). Here, Dr. Richardson essentially testified that a patient history indicating freedom from pain before a given event followed by pain of the type experienced and observed following the incident was a sufficient basis for diagnosis and treatment of Mr. Cooper's chronic pain syndrome.

The possibility of Mr. Cooper's CPS being

attributable to a factor other than the fall is a subject quite susceptible to exploration on cross-examination by opposing counsel. Similarly, the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation. Therefore, Nelson's contention that other conditions of Mr. Cooper's might have caused his CPS goes to the weight of the medical testimony, not its admissibility. Notably, on cross-examination of Dr. Richardson, Nelson elicited testimony that Dr. Richardson had really done no investigation into the causes of Mr. Cooper's CPS; Nelson presented evidence that Mr. Cooper suffered physical maladies before July 7, 1992; it also presented evidence that Mr. Cooper had been less than truthful in the history he submitted to Dr. Richardson. This evidence would permit a jury to conclude that the fall did nothing to cause CPS. The proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof. Daubert acknowledged the continuing vital role that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," 509 U.S. at 596, are to play in the trier of fact's ultimate evaluation of admissible but shaky evidence. See Daubert, 509 U.S. at 596. See also Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 507 n.10 (5th Cir. 1999); Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311 (11th Cir. 1999); Freeman v. Case Corp., 118 F.3d 1011, 1017 (4th Cir. 1997), cert. denied, 522 U.S. 1069 (1998). All of these tools were utilized by Nelson.

Here, a physician employed the accepted diagnostic tool of examination accompanied by physical history as related by the patient./8 In this case, this methodology was acceptable under the gatekeeping requirements of Daubert. We are aware that, although Daubert is concerned primarily with the issue of methodology, not conclusions, "conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data." General Elec. Co. v. Joiner, 118 S. Ct. 512, 519 (1997). Although a court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered," id., no such suggestion has been made here. Accordingly, in the circumstances presented here, Dr. Richardson's testimony should not have been excluded under Daubert solely on the ground that his causation diagnosis was based only on his patient's self-reported history.

On remand, the district court must revisit the

issue of the admissibility of the testimony of the physicians and must determine the admissibility of the proffered evidence in accordance with this decision. The district court retains, of course, the discretion to exclude portions of the depositions that are inconsistent with other Federal Rules of Evidence.

## G. Comparative Fault

Because we remand this case for a new trial, we must consider Nelson's cross-appeal. After the close of evidence, the district court granted a directed verdict for Mr. Cooper on the issue of comparative fault, finding no evidence to suggest that there was an alternate route for Mr. Cooper to use to get around the ditch. Nelson argues that there was testimony that Mr. Cooper knew the ditch was dangerous, and knew of ways around the ditch, and that, therefore, the jury should have had a chance to consider the question of comparative fault. We review the district court's decision de novo. See Payne, 146 F.3d at 432; Bowlen, 956 F.2d at 727.

A manager for Nelson, James Quickstead, testified that there was an alternative area for workers to park that would not require them to walk over the ditch. He acknowledged, however, that the Wal-Mart parking lot was the primary parking lot. Robert Bunch testified that some of Nelson's men took a truck around the ditch and that, on one occasion, a Nelson truck carried his tools around the ditch. Mr. Cooper responds that Bunch's testimony discussed the time period after Mr. Cooper's injury. Although Nelson is correct that Mr. Cooper was aware of the danger of the ditch and proceeded despite it, Mr. Cooper parked in the primary parking lot for Nelson workers, and crossed the primary route used by Nelson workers from that lot to the work site. We agree with the district court that his choice to do so does not implicate the doctrine of comparative fault.

## Conclusion

For the foregoing reasons, the jury verdict is reversed, and the case is remanded for further proceedings consistent with this opinion./9

REVERSED and REMANDED

/1 Although the case is brought by the injured party and the trustee of his bankruptcy estate, for the reader's convenience, we shall refer solely to Mr. Cooper throughout this opinion.

/2 Alternative parking was available, but the lot described in the text was the primary parking lot.

/3 Plaintiff's statement of genuine issues of material fact precluding summary judgment at I.C.10.

/4 Id. at I.C.9.

/5 We note that in a notice pleading regime, the plaintiff is often well advised when filing his complaint to limit the detail of its factual averments. See American Nurses' Ass'n v. State of Illinois, 783 F.2d 716, 724 (7th Cir. 1986) ("A plaintiff who files a long and detailed complaint may plead himself out of court by including factual allegations which if true show that his legal rights were not invaded.").

/6 See also Pippin v. Chicago Hous. Auth., 399 N.E.2d 596, 599 (Ill. 1979) ("The Authority's duty was limited by the extent of the undertaking"); Kotarba v. Jamrozik, 669 N.E.2d 1185, 1188 (Ill. App. Ct. 1996); Perkaus v. Chicago Catholic High Sch. Athletic League, 488 N.E.2d 623, 628 (Ill. App. Ct. 1986).

/7 It is also clear that counsel properly preserved his objection to the instruction given by the court. R.408 at 286-87. See Lawson v. Trowbridge, 153 F.3d 368, 372 (7th Cir. 1998).

/8 Fed. R. Evid. 803(4) n.4 (statements of external cause of pain not hearsay because of trustworthiness).

/9 Nelson has asked that Mr. Cooper be sanctioned for bringing a frivolous appeal. In light of our disposition of the case, Nelson's motion must be denied.