Ruby WALKER, Personal Representative and Administratrix of the Estate of Eric L. Walker, Deceased, Plaintiff,

v.

CONSOLIDATED RAIL CORP., Defendant.

No. 3:98–CV–0227RM.

United States District Court, N.D. Indiana, South Bend Division.

July 10, 2000.

Lawrence Katz, Joseph A. Coffey, Jr., Michael J. Olley, Coffey and Kaye, Bala Cynwyd, PA, for Ruby L. Walker, plaintiff.

Harold Abrahamson, Abrahamson Reed and Adley, Hammond, IN, Joseph M. Taylor, Philadelphia, PA, for Consolidated Rail Corp., defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on defendant Consolidate Rail Corporation's ("Conrail") motions to exclude expert testimony and for summary judgment. The case centers around a February 20, 1995 Conrail locomotive accident, after which

Eric Walker, then an engineer trainee, was treated in the Elkhart General Hospital emergency room for a forehead laceration, given a tetanus shot, and discharged. From the time of the accident until his apparent suicide in 1998, Mr. Walker saw several doctors and underwent various tests and treatments. He filed this case, which was transferred from the Easter District of Pennsylvania, in January of 1998. On June 2, 1998, Mr. Walker apparently committed suicide by placing himself in the path of an oncoming train. The complaint was then amended, naming Ruby Walker, his mother, as administratrix of his estate, and claiming that Mr. Walker's death was caused by the February 20, 1995 accident. The present motion challenges the plaintiff's complaint as it relates to liability for Mr. Walker's death. Conrail first seeks to exclude the testimony of Drs. Richard Saul and Gerald Cooke, without which Conrail says it is entitled to summary judgment.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as construed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "Rule 702 establishes two admissibility requirements for expert testimony: (1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case." *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir.2000) (citing *Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir.1994); *United States v. Stevenson*, 6 F.3d 1262, 1266 (7th Cir. 1993); FED. R. EVID. 702). The qualifications of Dr. Saul and Dr. Cooke are not in question.

■ The dispute surrounding the admissibility of Dr. Saul's and Dr. Cooke's testimony centers around the reliability and relevance of their opinions. Rule 702 requires more than a subjective belief or unsupported speculation. *Daubert v. Merrell Dow*, 509 U.S. at 590, 113 S.Ct. 2786.

The district court must act as a "gatekeeper" to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Id.* at 589, 113 S.Ct. 2786. The inquiry is thus a two-step analysis. The first step, reliability, focuses on the methodology used by the expert. *Clark v. Takata Corp.*, 192 F.3d 750, 756 (7th Cir.1999). The expert must substantiate his or her opinion, and not simply provide an ultimate conclusion without analysis. *Id.* at 758. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Either hands-on testing or review of experimental, statistical, or other scientific data gathered by others may suffice as a reasonable methodology upon which to base an opinion. *Clark v. Takata Corp.*, 192 F.3d at 758 (citing *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir.1996)).

The second prong of the two-step analysis focuses on the relevance of the testimony. More specifically, the court inquires whether evidence or testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 587 (7th Cir.2000); *Clark v. Takata Corp.*, 192 F.3d at 756. The court must ask whether the reasoning or methodology in question can be applied properly to the facts in issue. *Daubert v. Merrell Dow*, 509 U.S. at 593, 113 S.Ct. 2786. The inquiry as to the reliability and relevance of the testimony is "a flexible one" designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In addressing Dr. Saul's methodology, Conrail first argues that Dr. Saul's limited

contact with Mr. Walker renders his opinions unreliable speculation. Dr. Saul had no contact with Mr. Walker until some one and a half years after the February 1995 accident and then was limited to a one hour interview. This, according to Conrail, prohibits Dr. Saul from comparing Mr. Walker's post-accident mental state to his mental status before the accident, and has led to opinion "devoid of logic, and wholly unreliable." The court cannot agree.

■ Dr. Saul based his opinion on more than the hour-long interview with Mr. Walker. He relied on what he describes as "considerable voluminous records", which included reports of various medical and other professionals. This reliance on Mr. Walker's self-reported history and on the opinions of other medical professionals does not make Dr. Saul's testimony inadmissible. On the contrary, "[m]edical professionals reasonably may be expected to rely on self-reported patient histories." *Walker v. Soo Line*, 208 F.3d at 586 (citing *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir.2000)). "Such histories provide information upon which physicians may, and at time must, rely in their diagnostic work." *Id.* Reliance on the work of other medical professionals is often appropriate as well.

> Medical professionals have long been expected to rely on the opinions of other medical professionals in forming their opinions. *See Birdsell v. United States*, 346 F.2d 775, 779–80 (5th Cir.1965) ("With the increased division of labor in modern medicine, the physician making a diagnosis must necessarily rely on many observations and tests performed by others and recorded by them ...."); *see also Durflinger v. Artiles*, 727 F.2d 888, 892–93 (10th Cir.1984); *Jenkins v. United States*, 307 F.2d 637, 641–42 (D.C.Cir.1962); *Boehme v. Maxwell*, 309 F.Supp. 1106, 1110 (W.D.Wash.1968) (quoting *Birdsell*). Federal Rule of Evidence 703, the rule governing the appropriate bases of expert testimony, spe-

cifically contemplates, in its advisory committee notes, reliance on "reports and opinions from nurses, technicians and other doctors." FED. R. EVID. 703; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997) (citing Rule 703). Indeed, courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable. [ (citation omitted) ]

*Walker v. Soo Line*, 208 F.3d at 588.

While reliance on other's opinions is not always justified, *id.* ("Expert testimony relying on the opinions of others should, of course, be rejected if the testifying expert's opinion is too speculative ... or the underlying basis is faulty."), this does not appear to be such a case. Any deficiencies in the information that Dr. Saul relied upon may be challenged adequately on the witness stand. *Id.* (citing *Daubert v. Merrell Dow*, 509 U.S. at 596, 113 S.Ct. 2786) ("the factual underpinnings of expert testimony may be subject to counter-attack"). Conrail is free to present evidence that Dr. Saul relied upon inaccurate information and so call his conclusions into question.

■ Conrail next challenges the validity of Dr. Saul's diagnosis, based on an apparent inconsistency in his deposition testimony. Dr. Saul testified that the biochemical reason for apparently dormant schizophrenia is unknown and that he does not have evidence of why Mr. Walker or any of his patients are schizophrenic. There are, however, "stressors" that can lead a person with dormant schizophrenia into full, flagrant symptomatology. Dr. Saul opines that the accident served as the stressor that sent Mr. Walker into full, flagrant symptomatology. Conrail doesn't explain how Dr. Saul's inability to identify the cause of the dormant schizophrenia impairs his ability to diagnosis the "stressor" that led to the full, flagrant symptomatology. Accepting the confidence of the Supreme Court in the ability of juries to understand complicated material, *Daubert v. Merrell Dow*, 509 U.S. at 595–596, 113

S.Ct. 2786, the court cannot find that Dr. Saul's testimony would not assist a jury with a fact at issue in this case. Although the burden of demonstrating reliability rests on Mrs. Walker, Conrail hasn't explained why her showing is insufficient as to Dr. Saul's testimony.

Conrail next asserts that Dr. Cooke's opinion is flawed due to his lack of contact with Mr. Walker before the accident. For the same reasons that this argument failed to exclude the testimony of Dr. Saul, it also fails to render Dr. Cooke's testimony unreliable.

■ Conrail's next argues that the differing diagnoses of Dr. Saul and Dr. Cooke render their opinions unreliable, and should lead to their exclusion. The law says otherwise. "That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible." *Walker v. Soo Line*, 208 F.3d at 589 (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 61 F.Supp.2d 1335, 1341 (S.D.Fla.1999) ("Merely because two qualified experts reach directly opposite conclusions using similar, if not identical, data bases ... does not necessarily mean that, under *Daubert*, one opinion is per se unreliable.")). To the extent that one doctor may have relied on faulty information, "the matter certainly could be explored on cross-examination." *Id.* Conrail challenges the Seventh Circuit's reliance on *Allpattah Services*, but the court doesn't understand why varying opinions are helpful when presented by opponents would become unhelpful when offered by one party rather than two. The testimony of Dr. Saul and Dr. Cooke cannot be excluded on this ground.

Conrail further argues that the opinions of Dr. Saul and Dr. Cooke are unreliable because that their opinions are based on the unsupported premise that Mr. Walker's mental illness was caused, or exacerbated, by traumatic brain injury. Dr. Cooke's report to Dr. Saul assumed traumatic brain injury, and Dr. Saul then based his opinion on that report. Noting that Mr. Walker underwent several tests that produced no objective evidence of such an injury, Conrail argues that Dr. Cooke's opinion must be either based on unreliable methodology or simply wrong, and that without that underpinning, neither opinion can stand. At his deposition, Dr. Cooke explained that his own testing and evaluation led him to the conclusion that Mr. Walker had suffered a traumatic brain injury. Each part of the neuropsychological battery, he explained, looks to a different portion of the brain.

■ It may be that no reliable scientific principle warrants a forensic psychologist (such as Dr. Cooke) in concluding, without any objective evidence (such as from a CAT scan, and MRI, or an EEG), that a person has suffered a traumatic brain injury. But Conrail has cited nothing that would lead the court to question the principles underlying Dr. Cooke's opinion, again leaving the court with no reason to doubt Dr. Cooke's assertion. If Dr. Cooke could reach that opinion, the court is left with no basis to exclude the reliant opinion of Dr. Saul. Fed.R.Evid. 703; *Walker v. Soo Line*, 208 F.3d at 588("Medical professional have long been expected to rely on the opinions of other medical professional in forming their opinions."). The testimony cannot be excluded based upon such reasoning.

For the reasons set forth above, the court declines to exclude the opinions of Drs. Saul and Cooke from the summary judgment record. Conrail's summary judgment motion, which was based entirely upon the exclusion of the expert opinion testimony that is essential to the plaintiff's proof of causation, must be denied as well. The court DENIES defendant's motion to exclude expert testimony [Docket No. 53–1] and DENIES defendant's motion for summary judgment [Docket No. 53–2].

SO ORDERED.